UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WENDELL DWAYNE O'NEAL,                    CIVIL NO. 06-2336 (ADM/JSM)

       Plaintiff,

v.                                        REPORT AND RECOMMENDATION

SHERI MOORE,
       St. Paul City Clerk,
PETE CRUM,
       St. Paul Police Officer,
YILENG VANG,
       St. Paul Police Officer,
NIKKOLE GRAUPMAN,
AND THE
CITY OF ST. PAUL,
       a Municipal Corporation,

       Defendants.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendants' Notice of Removal [Docket No. 1] and plaintiff Wendell Dwayne O'Neal's Motion for Temporary Restraining and Permanent Injunction [Docket No. 6]; Motion for Remand [Docket No. 7]; Motion for Subpoena [Docket No. 8]; Ex Parte Supplemental Temp. Restraint and Perm. Injunction Motion [Docket No. 9]; Supplementally Amended Remand Motion [Docket No. 10]; Ex Parte Motion for Restraining Order and, or Temporary Injunction Motion [Docket No. 11]; Ex Parte Supplemental Temp. Restraint, and Perm. Injunction Motion [Docket No. 12]; Contempt Sanctions Motion [Docket No. 13]; Default Judgment Motion [Docket No. 18]; Contempt and Strike Supplemental Motion [Docket No. 19]; Exhibit Submission Regarding Ex Parte Temporary Restraint/Permanent Injunction and

Supplemental Pleadings [Docket No. 24]; Additional Exhibit Submission Regarding Ex Parte Temporary Restraint/Permanent Injunction and Supplemental Pleadings [Docket No. 25]; Administrative Emergency Motion to File Additional Pleadings, Inter Alia, Against Defendants [Docket No. 26]; Plaintiff's Responsive Memorandum for Injunction [Docket No. 27]; Supplemental Plaintiff's Responsive Memorandum for Injunction [Docket No. 28]; Contempt Sanctions Reply [Docket No. 32]; Amended Supplemental Plaintiffs' Responsive Memorandum for Injunction [Docket No. 33]; Injunctive Relief Proposal of Proofs for Protective Order [Docket No. 34]; Additional Injunctive Relief Proposal of Proofs for Protective Order [Docket No. 35]; Administrative Emergency Motion, for Subpoena Issuance to Obtain Injunction Proposal Proofs [Docket No. 36]; Second Amended Supplemental Plaintiffs' Responsive Memorandum for Injunction [Docket No. 37]; Amended Contempt Sanctions Reply [Docket No. 38]; Exhibit Regarding Civil Complaint [Docket No. 41]; Clarification Request [Docket No. 42]; Correct Amended Contempt Sanctions Reply [Docket No. 47]; and Amended Clarification Request [Docket No. 48].

Plaintiff appears pro se. Defendants are represented by Meghan Riley, Assistant City Attorney for the City of St. Paul. Based upon the pleadings, it is recommended that all of plaintiff's motions be **DENIED**.[1]

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff's Complaint was initially filed in the Second Judicial District Court of the State of Minnesota on May 16, 2006. Plaintiff's Complaint is based on events that first

---

[1]   Not all of plaintiff's motions require a Report and Recommendation to the District Court. However, because plaintiff's motions are so related to each other, the Court has decided to address them all in a Report and Recommendation.

occurred on August 15, 2005. The factual allegations, as set forth in plaintiff's Complaint, are as follows.

Count I of plaintiff's Complaint alleges that on August 15, 2005, plaintiff was in the lobby of the Radisson Hotel at 11 Kellogg Boulevard in St. Paul, Minnesota. Plaintiff called 911 in order to obtain his wallet, which was in possession of the St. Paul Police Department. 911 dispatched Defendant Officer Yileng Vang. Plaintiff observed defendant Officer Vang outside of the hotel and proceeded toward him, believing that he was there to respond to the 911 call. According to plaintiff, Officer Vang then assaulted him, causing him to retreat back inside of the hotel. Plaintiff alerted a hotel security agent, Nina Cook, to the assault made against him by Officer Vang. Plaintiff used a pay phone and called 911 again, asking for a supervisory officer to investigate Officer Vang's behavior. After waiting for a response to his second 911 call , plaintiff asked Cook to call 911 for him from her hotel phone. Because plaintiff was afraid that Officer Vang would persist in assaulting him, plaintiff remained inside the hotel. Defendant Officer Nikkole Graupman arrived at the hotel in response to the second 911 call, but not until after Officer Vang had effectuated a false arrest of plaintiff. According to plaintiff, Officer Graupman did not investigate the second 911 call. As a result of these circumstances, plaintiff alleges civil rights violations under 42 U.S.C. §§1981, 1982, 1983, 1985(3), and 2000 et seq. and denial of equal protection. Complaint, ¶¶ 1–6.

Count II alleges that neither Officer Vang nor Officer Graupman responded to the 911 calls made by plaintiff, in violation of "authority governing MUNICIPAL CIVIL SERVICE requiring discharge of duties" and in violation of 42 U.S.C. §§1981, 1982, 1983, 1985(3) and 2000. Complaint, ¶ 7.

In Count III, plaintiff alleges that despite his verbal and written requests, he has been denied access to records he seeks pursuant to the Minnesota Government Data Practices Act ("MGDPA"), and he names defendant Sheri Moore as the person ultimately responsible for the denial of access.[2]  Moore is employed as a clerk for the City of St. Paul, and plaintiff alleges that in her professional capacity, she denied him access to St. Paul police records in furtherance of a conspiracy to violate the MGDPA. Plaintiff states that he attempted to obtain records of the 911 calls and the call made by Cook placed on the evening of August 15, 2005.  The officer who took plaintiff's initial request, Officer Smiley, informed plaintiff that it would be processed in accordance with established procedures by personnel employed by the police chief to determine whether the information was publicly accessible and then qualifying records would be disclosed pursuant to the MGDPA.  Plaintiff asserts that he received no subsequent notice, constituting the initial violation of the MGDPA.  According to plaintiff, Officer Smiley did not provide Moore with plaintiff's request, but rather delivered the request to defendant Officer Pete Crum of the St. Paul Police Department as a means of diversion, again violating the MGDPA and also violating federal civil rights statutes prohibiting discrimination.  Further, plaintiff claims that Moore failed to acknowledge receipt of his MGDPA request or to provide him with disclosure of the records sought within the time prescribed.  Plaintiff asserts that these actions make Moore liable for municipal civil disobedience, violate federal statutory codes promoting equal protection and constitute malicious, retaliatory and conspiratorial motives to deny plaintiff access to the records,

---

[2]      Defendant Moore is alleged by plaintiff to be the individual officially designated to handle MGDPA requests for the City of St. Paul.

all in violation of 42 U.S.C. §§1981, 1982, 1983, 1985(3) and 2000 et seq. and Minn. Stat. §§ 13.08, 13.09.  Complaint, ¶¶ 8–13.

Plaintiff alleges in Count IV that he contacted Officer Smiley, who informed him that the records were being reviewed, and that plaintiff should contact Officer Crum, rather than Moore, for further information.  During a telephone inquiry on October 13, 2005, Officer Crum indicated to plaintiff that he wanted to contact the St. Paul City Attorney prior to providing records of the 911 calls.  Plaintiff alleges that this constitutes evidence of Officer's Crum's knowledge of Moore's liability under the MGDPA.  Plaintiff subsequently provided Officer Crum with a second written request for disclosure of the August 15, 2005 records and made an additional request for disclosure of the names of the 911 dispatchers, all police personnel dispatched and police reports confirming clearance from the dispatches.  According to plaintiff, Officer Crum provided an unlawful response to this second request, usurping the authority of Moore, and denying plaintiff his civil rights to obtain the records in an attempt to conceal evidence, obstruct justice, and further deny him access to the courts.  Plaintiff claims that Officer Crum "unlawfully, malicious, vindictively, retaliatively and discriminatively" denied plaintiff's request by false claim that the records were confidential.  Complaint, ¶¶14-18.

Count V alleges that Officer Crum wrongfully advised plaintiff that the law prohibited mailing him a copy of the 911 records sought, contrary to lawful provisions of the MGDPA.  Complaint, ¶19.

Count VI alleges that Officer Crum further sought to deny plaintiff the records he had requested by pretending there was a requirement to physically verify plaintiff's identification, which conferred additional liability charges against Moore.  Plaintiff further

alleges that Officer Crum unlawfully denied the police records in efforts to protect Officer Vang and Officer Graupman through concealment and suppression of the records, again violating plaintiff's civil rights.  Complaint, ¶¶ 20-21.

Count VII alleges that Officer Crum unlawfully overcharged plaintiff for a transcript of the police records plaintiff sought, again in an effort to deny disclosure of the records.  This further violated plaintiff's civil rights and the MGDPA.  Complaint, ¶¶ 22-23.

Count VIII alleges further denial of access to the records sought by plaintiff. According to plaintiff, Officer Crum did eventually provide Moore with plaintiff's second MGDPA request; Moore then sent plaintiff a letter, which plaintiff claims he did not receive due to unlawful stall and denial tactics designed to deny plaintiff access to the records.  Plaintiff was then forced to travel over 800 miles to obtain the records that were denied him by defendants.  Complaint, ¶¶ 24-25.

Count IX charges Moore with "maliciously, vindictively, conspiratorially and discriminatively" intermingling the second and third emergency 911 calls placed on August 15, 2005.  Plaintiff further alleges that his civil rights were denied because he did not have access to the records until March or April of 2006.  Complaint, ¶¶ 26-27.

Count X charges all of the defendants with MGDPA violations and civil rights infringements pursuant to previously cited state and federal statutes, and asks that the defendants be discharged and assessed other punitive penalties.  Complaint, ¶ 28.

Count XI charges the defendant City of St. Paul with instituting an unlawful policy, custom, practice and procedure in deliberate indifference to plaintiff's civil rights

to obtain police records pursuant to the MGDPA by permitting a person other than its appointed official to deny disclosure of the records.  Complaint, ¶ 30.

Count XII charges the defendants with obstruction of justice due to their denial of the 911 records to plaintiff.  Complaint, ¶ 31.

Count XIII charges the defendants with intentionally inflicting mental anguish and emotional distress on plaintiff by denying him disclosure of the records sought.  Plaintiff also states that he has suffered irreparable damages because the second 911 call made by plaintiff on August 15, 2005 was "camouflaged" with the third 911 call made by Nina Cook on the same night, and because the calls were intermingled, plaintiff's 911 call to Officer Vang has been lost and cannot be recovered.  Complaint, ¶¶ 32, 33.

Plaintiff's Complaint further states that he is a member of three separate protected classes pursuant to 42 U.S.C. § 1985(3).  First, plaintiff states that he is a Melanic Amerikan, a person whose ancestors descended from Afrika, qualifying him to be recognized as a person in a class protected under laws.  Second, plaintiff states that he suffers from a mental illness, which he claims also entitles him to recognition as a person in a protected class.  Third, plaintiff states that he is a political activist in a religious organization, the Melanic Islamic Palace of the Rising Sun, Inc., which plaintiff alleges has been deemed a Security Threat Group by the U.S. Government, and qualifies him to be recognized as a member of a protected class.  Complaint, ¶¶ I-III, p. 10-11.

In the form of relief, plaintiff requests monetary damages in the amount of $1.0 million dollars against each defendant for each claim made against them; punitive damages in the amount of $25,000 for each claim of violation made against defendants;

compensatory damages in an amount of value "equivalent to suffrages for permanent loss of police records"; attorney fees and costs, as provided for under 42 U.S.C. §1988; and contempt and discharge penalties, for either civil disobedience, contempt, usurpation, or alleged municipal civil service violations.  Complaint, pp. 11-12.

Plaintiff also filed a Supplemental Civil Complaint ("Supp. Complaint") in Second Judicial District Court of the State of Minnesota on May 19, 2006, adding the following counts.[3]

Count XIV alleges that Officer Vang "maliciously, vindictively, retaliatorily and discriminatively" denied plaintiff the opportunity to become aware of the reason of his arrest for trespassing by failing to issue a citation, thereby violating previously cited civil rights, violating Minn. Stat. § 609.43 as well as violating municipal service under Minn. Stat. § 44.01, et seq.   Supp. Complaint, ¶34.  Further, plaintiff alleges that the City of St. Paul implemented an unlawful custom or practice when it charged plaintiff a $5.00 fee for a copy of the citation.  Id., ¶ 36.  According to plaintiff, the actions of Vang and the City of St. Paul resulted in the MGDPA violations, which occurred in order to protect Vang and the City of St. Paul from liability.  Id., ¶ 37.

Count XV alleges that the City of St. Paul failed to properly train Vang or provide proper supervision of Vang, and that the City further unlawfully implemented a policy when it permitted defendants to fail to perform their duties, in violation of state and federal laws.  Supp. Complaint, ¶¶ 38, 39.  For this Count, plaintiff cites violation of

---

[3]    Although plaintiff's Supplemental Civil Complaint was filed with the Second Judicial District Court of the State of Minnesota prior to removal of this case to federal court, it was not included with the removal papers when the case was removed.  Plaintiff did attach his Supplemental Civil Complaint as an exhibit to his Contempt and Strike Supplemental Motion [Docket No. 19], which is addressed later in this Report and Recommendation.

Minn. Stat. § 609.43, and 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, 1988 and 2000.

Count XVI alleges that Vang "maliciously, vindictively and discriminatively" failed to draft a police report, contrary to Minn. Stat. §§ 44.01 and 609.43.  Supp. Complaint, ¶¶ 40, 41.

Count XVII alleges that defendant Graupman also failed to draft a police report in violation of Minn. Stat. §§ 44.01 and 609.43 with discriminatory motives, denying plaintiff his civil rights.  Supp. Complaint, ¶ 42.

Count XVIII alleges that the City of St. Paul failed to properly train Officer Graupman in violation of Minn. Stat. §§ 44.01 and 609.43, and in denial of plaintiff's civil rights.  Supp. Complaint, ¶ 43.

Count XIX alleges that Officer Vang took personal items from plaintiff in retaliation for plaintiff calling 911 a second time, in violation of applicable Minnesota Statutes prohibiting simple robbery, larceny, privacy invasion, and theft, as well as in violation of the MGDPA, municipal service, and federal civil rights statutes.  Supp. Complaint, ¶ 44.

Count XX alleges that Moore was the city official assigned to disclose the records sought by plaintiff pursuant to the MGDPA, and that Moore knowingly collaborated with the other defendants to conceal the records, violating previously cited state and federal statutes.  Supp. Complaint, ¶ 45.

Count XXI alleges that all defendants conspired, collaborated and attempted to conceal the assault and theft committed by Officer Vang, in violation of the MGDPA and previously cited civil rights statutes.  Supp. Complaint, ¶ 46.

On June 8, 2006, defendants filed their Answer to plaintiff's Complaint. [Docket No. 2]   In this Answer, defendants denied all of plaintiff's material allegations. Defendants' Answer did not address the allegations set forth in plaintiff's Supplemental Civil Complaint, nor have defendants ever filed an answer or otherwise respond to plaintiff's Supplemental Civil Complaint.   On the same date, June 8, 2006, defendants removed this case to federal court. [Docket No. 1]   Subsequent to the removal, plaintiff filed numerous pleadings from June 19, 2006 through July 24, 2006.[4]   All of plaintiff's pleadings can be generally grouped into six recognizably separate motions: motion to remand;[5] motion for sanctions;[6] motion for subpoena;[7] motion for default judgment;[8]

---

[4]      In this case, plaintiff has filed approximately 29 separate pleadings.  The Court issued an Order on June 23, 2006 [Docket No. 17], directing that no further motions were to be filed by either party until the Court had ruled on the motions that had been filed up to that date.   Plaintiff subsequently filed additional pleadings related to his previous filings as well as two new motions that are addressed in this Report and Recommendation, as well. [Docket Nos. 18 and 26].  The Court issued a second Order on July 20, 2006 [Docket No. 46], again ordering that no further pleadings, motions, documents, or correspondence be filed until a ruling was issued.  Plaintiff subsequently filed four letters to the Court and an amended reply to one of defendants' filings.

[5]      Docket No. 7, Remand Motion, and Docket No. 10, Supplementally [sic] Amended Remand Motion.

[6]      Docket No. 13, Contempt Sanctions Motion, Docket No. 19, Contempt & Strike Supplemental Motion, Docket No. 32, Contempt Sanctions Reply, Docket No. 38, Amended Contempt Sanctions Reply, Docket No. 41, Exhibit to Amended Contempt Sanctions Reply, and Docket No. 47, Correct Amended Contempt Sanctions Reply.

[7]      Docket No. 8, Subpoena Motion, and Docket No. 36, Administrative Emergency Motion, for Subpoena Issuance to Obtain Injunction Proposal Proofs.

[8]      Docket No. 18, Default Judgement Motion.

motion to file additional pleadings;[9] and motion for temporary restraining order or injunction.[10] This Court will now proceed to address each of these motions.

## II.    PLAINTIFF'S MOTION FOR REMAND

Plaintiff originally filed his Complaint in the Second Judicial District Court of Minnesota on May 16, 2006.  On June 8, 2006, defendants filed a Notice of Removal of Civil Action Under 28 U.S.C. §1441(b) and §1441(c), asserting that this Court properly has jurisdiction based on both original jurisdiction and diversity jurisdiction.  In response to the removal, plaintiff filed a Remand Motion [Docket No.7] and a Supplementally [sic] Amended Remand Motion [Docket No. 10], arguing that this Court lacks subject matter jurisdiction and that the case is properly situated in the Second Judicial District Court of Minnesota.  Defendants filed a responsive memorandum on July 19, 2006.

Plaintiff's Complaint alleges violations of 42 U.S.C. §§1981, 1982, 1983, 1985(3), 1986, 1988, and 2000, et seq., as well as violations of the Minnesota Government Data

---

[9]     Docket No. 26, Administrative Emergency Motion, to File Additional Pleadings, Inter Alia, Against Defendants.

[10]     Docket No. 3, Second Supplemental Temporary Restraint, Permanent Injunction, Irreparable Damages Claim Motion, Docket No. 6, Motion for Temporary Restraining and Permanent Injunction, Docket No. 9, Ex Parte Supplemental Temp. Restraint and Perm. Injunction Motion, Docket No. 11, Ex Parte Motion for Restraining Order and, or Temporary Injunction Motion, Docket No. 12, Ex Parte Supplemental Temp. Restraint, and Perm. Injunction Motion, Docket No. 24, Exhibit Submission Regarding Ex Parte Temporary Restraint/Permanent Injunction and Supplemental Pleadings, Docket No. 25, Additional Exhibit Submission Regarding Ex Parte Temporary Restraint/Permanent Injunction and Supplemental Pleadings, Docket No. 27, Plaintiff's Responsive Memorandum for Injunction, Docket No. 28, Supplemental Plaintiff's Responsive Memorandum for Injunction, Docket No. 33, Amended Supplemental Plaintiffs' Responsive Memorandum for Injunction, Docket No. 34, Injunctive Relief Proposal of Proofs for Protective Order, Docket No. 35, Additional Injunctive Relief Proposal of Proofs for Protective Order, Docket No. 36, Administrative Emergency Motion, for Subpoena Issuance to Obtain Injunction Proposal Proofs, Docket No. 37, Second Amended Supplemental Plaintiffs' Responsive Memorandum for Injunction.

Practices Act.[11]   In his remand motions, plaintiff argues that his civil action was commenced under the MGDPA and therefore, the action belongs in state court.

In their responsive memorandum [Docket No. 43], defendants first contend that this Court has jurisdiction based on diversity of the parties, and second, that the Court has original jurisdiction based upon plaintiff's civil rights allegations.

## A.   Removal Based on Diversity Jurisdiction

Diversity jurisdiction is governed by 28 U.S.C. §1332(a), which states that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States."   It is true that plaintiff is alleged to be a citizen and resident of the State of Wisconsin, whereas defendant City of St. Paul is a municipal corporation organized and existing under the laws of the State of Minnesota,

---

[11]    Plaintiff also includes Minn. Stat. §§ 44.01, 44.07, 44.08 in his Complaint and § 609.43 in his Supplemental Complaint as additional bases for his cause of action. This Court observes that the Chapter 44 statutes address the qualifications and merit system of employees of Municipal Civil Service and may very well not form a basis for a private cause of action.   To determine whether a private cause of action is created under a statute, courts consider (1) whether the plaintiff belongs to the class for whose benefit the statute was enacted; (2) whether the legislature indicated an intent to create or deny a remedy; and (3) whether implying a remedy would be consistent with the underlying purposes of the legislative enactment. <u>Counties of Blue Earth v. Minnesota Dept. of Labor and Industry</u>, 489 N.W.2d 265, 268 (Minn.App.1992) (citing <u>Cort v. Ash</u>, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088 (1975)).   Chapter 44 was clearly designed to establish the merit system for employees of a municipality.   Because plaintiff does not appear to be an employee of a municipality, this Court questions whether he belongs to the class for whose benefit Chapter 44 was enacted.   Similarly, this Court notes that Minn. Stat. § 609.43 is a criminal statute addressing misconduct of a public officer or employee.   A criminal statute does not give rise to a civil cause of action unless the statute expressly or by clear implication so provides. <u>Summers v. R & D Agency, Inc.</u>, 593 N.W.2d 241 (Minn.App. 1999) (citing <u>Larson v. Dunn</u>, 460 N.W.2d 39, 47 n. 4 (Minn.1990)).   The language of § 609.43 neither expressly nor by implication contemplates a civil cause of action.   Therefore, it may very well be that § 609.343 does not create a private cause of action for plaintiff.

and the individually named defendants are believed to be citizens and residents of the State of Minnesota.  <u>See</u> Notice of Removal, ¶ 5 [Docket No. 1].  Further, plaintiff's requested damages are well is excess of $75,000.  Therefore, diversity of citizenship and the amount in controversy requirements existed when the Complaint was filed and the case could have been originally brought in federal court.  However, the fact that a case could have been brought in federal court based on diversity jurisdiction does not mean that it can be removed to federal court by the defendants in all circumstances. Removal of a state civil action to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. <u>Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.</u>

(Emphasis added).

Section 1441(b) is explicit that "a defendant may not remove to federal court on the basis of diversity if <u>any</u> of the defendants is a citizen of the state where the action was filed."  <u>Hurt v. Dow Chem. Co.</u>, 963 F.2d 1142, 1145 (8th Cir. 1992) (emphasis added).  <u>See also</u> <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68, 117 S.Ct. 467 (1996)

(defendants may remove an action to federal court provided that <u>no defendant</u> is a citizen of the state in which the action is brought); <u>Midwestern Distrib., Inc. v. Paris Motor Freight Lines, Inc.</u>, 563 F.Supp. 489, 491 (E.D.Ark. 1983) (where subject matter jurisdiction is based solely on diversity, the case may be properly removed only if <u>none</u> of the defendants is a citizen of the forum state).

Therefore, removal based upon diversity jurisdiction was improper in this case because one or more of the defendants are citizens of the forum state, Minnesota.

**B.**   **Removal Based on Original Jurisdiction**

Defendants also submit that removal was proper because this Court has original jurisdiction over this case, based on plaintiff's alleged violations of 42 U.S.C. §§1981, 1982, 1983, 1985(3), 1986, 1988, and 2000 <u>et seq</u>.  Original jurisdiction is governed by 28 U.S.C. §1331, which states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Clearly, this Court has original jurisdiction over plaintiff's claims arising under 42 U.S.C. §§1981, 1982, 1983, 1985(3), 1986, 1988, and 2000 <u>et seq</u>.  Plaintiff's Complaint expressly invokes these federal statutes and claims specific civil rights violations under them.   However, plaintiff also claims violation of the Minnesota Government Data Practices Act under Minn. Stat. §§13.02, 13.08, and 13.09, as well as violations of Minn. Stat. §§44.01 and 609.43.[12]  This Court does not have original jurisdiction over claims arising under state statute; nonetheless, defendants maintain that the Court has

---

[12]     Although plaintiff asserts in the title of his Complaint that defendants have violated Minn. Stat. §§ 44.01, 44.07 and 44.08, there is no further mention of §§ 44.07 or 44.08 in the remainder of his Complaint or in his Supplemental Complaint.

supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367.   Defendants

are correct.

Supplemental, or pendant, jurisdiction exists where "the relationship between [the

federal question] claim and the state claim permits the conclusion that the entire action

before the court comprises but one constitutional 'case.'"   United Mine Workers of Am.

v. Gibbs, 383 U.S. 715, 726 (1966); see also Jinks v. Richland County, 538 U.S. 456,

123 S. Ct. 1667, 1669 (2003) (holding that "in any civil action of which the district courts

have original jurisdiction, the district courts shall have supplemental jurisdiction over all

other claims that are so related to claims in the action within such original jurisdiction

that they form part of the same case or controversy").   The United States Supreme

Court explained pendant jurisdiction in this way:

> Pendant jurisdiction, in the sense of judicial power, exists
> whenever there is a claim 'arising under [the] Constitution,
> the Laws of the United States, and Treaties made, or which
> shall be made, under their Authority . . .,' and the relationship
> between that claim and the state claim permits the
> conclusion that the entire action before the court comprises
> but one constitutional 'case.'   The federal claim must have
> substance sufficient to confer subject matter jurisdiction on
> the court.   The state and federal claims must derive from a
> common nucleus of operative fact.   But if, considered without
> regard to their federal or state character, a plaintiff's claims
> are such that he would ordinarily be expected to try them all
> in one judicial proceeding, then, assuming substantiality of
> the federal issues, there is power in federal courts to hear
> the whole.

Gibbs, 383 U.S. at 726 (emphasis and alterations in original) (citations omitted); see

also Raygor v. Regents of the Univ. of Minnesota, 534 U.S. 533, 539 (2002) (adopting

the Gibbs definition of pendant jurisdiction);   Fielder v. Credit Acceptance Corp., 188

F.3d 1031, 1037 (1999) (defining supplemental jurisdiction as over claims arising from a

"common nucleus of operative fact" and stating that there is supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution");  Reyes v. Edmunds, 416 F. Supp. 649, 651 (D. Minn. 1976) (dismissing claims for lack of jurisdiction because the plaintiff's claims were not claims that "'would ordinarily be expected to [be tried] all in one proceeding'").

The supplemental jurisdiction test set forth in Gibbs has been codified in 28 U.S.C. §1367(a):

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Subsection (c) of §1367 permits the Court to decline to exercise supplemental jurisdiction if any of the following conditions are met:

> 1. The claim raises a novel or complex issue of State law,
> 2. The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> 3. The district court has dismissed all claims over which it has original jurisdiction, or
> 4. In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Therefore, if plaintiff's claims under state law form part of the same case or controversy as his federal claims, then pursuant to §1367(a) the Court is obliged to exercise supplemental jurisdiction in the absence of one of the exceptions set forth in §1367(c).  Moubry By and Through Moubry v. Independent School Dist. No. 696 (Ely),

951 F.Supp. 867, 890 (D.Minn. 1996) (citing McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)).[13]

Plaintiff's claims are premised on the events of August 15, 2005, and on the subsequent alleged difficulty he had in obtaining records of 911 calls made on the night of August 15, 2005.   Plaintiff contends first that his civil rights were violated by the actions of the officers of the St. Paul Police Department on August 15, 2005, and subsequently, that his rights under the MGDPA and state and federal statutes when he was denied access to the 911 records.   Plaintiff intertwines his state claims with his federal claims of civil rights violations throughout the Complaint and Supplemental Complaint.   Specifically, Count 1 of plaintiff's Complaint asserts only federal claims relating to the incidents on August 15, 2005, alleging civil rights and constitutional violations.   The remainder of the counts in the Complaint and the Supplemental Complaint contain both state and federal claims.   Count II claims violation of municipal civil service in furtherance of civil rights violations.   Counts III through XII claim that various defendants violated the MGDPA and denial of plaintiff's civil rights as a result of their mishandling of plaintiff's requests for the records of his 911 calls.   Count XIII claims intentional infliction of emotional distress, inflicted while defendants denied disclosure of records under the MGDPA and while defendants denied his civil rights.   Counts XIV through XXI allege violations of Minn. Stat. §§ 44.01, 609.43 and the MGDPA, all in violation of plaintiff's civil rights.

---

[13]     In Moubry, the court maintained supplemental jurisdiction over a MGDPA claim where the MGDPA claim and a federal claim derived from a common nucleus of operative facts.  Moubry, 951 F.Supp. at 890.

The Court has original jurisdiction over plaintiff's civil rights claims.  The alleged civil rights violations underlie plaintiff's entire cause of action.  Further, the factual bases for the MGDPA claims are identical to the bases for all of his federal civil rights claims with the exception of Count I.  Consequently, the state and federal claims derive from a common nucleus of operative facts and are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  See 28 U.S.C. §1367(a).

This Court also finds that none of the exceptions under 28 U.S.C. §1367(c) are applicable to this case.  Plaintiff's state law claims are not novel or complex.   The MGDPA claim and the other claims under state law do not predominate over the federal civil rights claims; rather the crux of plaintiff's complaint is the violation of federal civil rights laws.  The Court has not dismissed any of the civil rights claims over which it has original jurisdiction.  Finally, the Court finds no compelling reason to decline jurisdiction in this case at this time.

For all of these reasons, this Court concludes that it has original jurisdiction over plaintiff's federal claims as well as supplemental jurisdiction over plaintiff's state law claims.  The Court therefore recommends that plaintiff's Motion for Remand be denied.

## III.    PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff has filed a Contempt Sanctions Motion [Docket No. 13] and a Contempt & Strike Supplemental Motion [Docket No. 19][14].   The Contempt Sanctions Motion

---

[14]     Plaintiff submitted to the chambers of this Court a courtesy copy of his Contempt & Strike Supplemental Motion [Docket No. 19].  However, the copy received by this Court was not the same as the Contempt & Strike Supplemental Motion that was officially filed with the Clerk of Court.  Because the motion that was filed with the Clerk of Court is more complete, and is considered to be the officially filed motion, this Court

alleges that counsel for defendants filed the Notice of Removal and the Answer to Plaintiff's Complaint without proper service on plaintiff.  Plaintiff alleges that defendants willfully violated 28 U.S.C. §1444 and §1446(a)(b), and Fed. R. Civ. P. 11(c)(1)(A) and 11(b)(1)(2)(3), and asks this Court to impose sanctions and strike defendants' pleadings pursuant to Fed. R. Civ. P. 12(f).  Plaintiff's Contempt & Strike Supplemental Motion further claims that counsel for defendants sent plaintiff a letter threatening him and seeking to deceive him into withdrawing his Supplemental Civil Complaint, and that defendants deliberately failed to file their Notice of Removal properly.  [Docket No. 19, ¶¶ 5 and 6].  Plaintiff also appears to argue that by removing this case to federal court, counsel for defendants made misrepresentations to plaintiff as well as to the Court because counsel for defendants "knew" that the case did not arise under any United States constitutional law or authority.  Id., ¶ 8.  With regards to relief, plaintiff requested the Court sanction counsel for defendants, strike defendants' removal pleading, and grant damages to plaintiff for costs, attorney fees, and loss of time.

In response, defendants argued that they complied fully with Rule 5 of the Federal Rules of Civil Procedure and properly noticed plaintiff with any filings.   In addition, defendants asked the Court to deny plaintiff's motion for sanctions because he failed to comply with the safe harbor provisions of Fed. R. Civ. P. Rule 11.

Rule 11(b) and (c) of the Federal Rules of Civil Procedure provide the parameters for when sanctions may be imposed:

---

utilized that pleading, rather than the submission it received from plaintiff in chambers. Plaintiff is reminded that the courtesy copy sent to chambers must be _identical_ to the copy filed with the Clerk of Court.

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Civ. P. 11 (b), (c).

Rule 11(c)(1)(A) contains the "safe harbor" provision, which requires that a party moving for sanctions first serve the motion on the opposing party, allowing the opposing party time to correct any challenged conduct before the motion is filed with the court.

That Rule states in pertinent part:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe),

the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. 11(c)(1)(A).

Plaintiff's first contention in support of his sanction motions is that he was not properly served with defendants' Notice of Removal, and that defendants lied that service had been properly made.

Rule 5(b) of the Federal Rules of Civil Procedure governs the form of service of pleadings, and states in pertinent part:

(1) Service under Rules 5(a) and 77(d) on a party represented by an attorney is made on the attorney unless the court orders service on the party.

(2) Service under Rule 5(a) is made by:
A) Delivering a copy to the person served by:
(i) handing it to the person;
(ii) leaving it at the person's office with a clerk or other person in charge, or if no one is in charge leaving it in a conspicuous place in the office; or
(iii) if the person has no office or the office is closed, leaving it at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.
(B) Mailing a copy to the last known address of the person served. Service by mail is complete on mailing.
(C) If the person served has no known address, leaving a copy with the clerk of the court.
(D) Delivering a copy by any other means, including electronic means, consented to in writing by the person served. Service by electronic means is complete on transmission; service by other consented means is complete when the person making service delivers the copy to the agency designated to make delivery. If authorized by local rule, a party may make service under this subparagraph (D) through the court's transmission facilities.

> (3) Service by electronic means under Rule 5(b)(2)(D) is not
> effective if the party making service learns that the attempted
> service did not reach the person to be served.

(Emphasis added).

In opposition, defendants argue that on June 7, 2006, they served plaintiff with (1) Notice of Removal of Civil Action Under 28 U.S.C. §1444(b) and (c); (2) Notice of Filing of Removal to United States District Court; (3) Civil Cover Sheet; and (4) Defendants' Answer to Plaintiff's Complaint.  Defendants' Memorandum in Opposition to Motion for Sanctions, p. 2; Exhibit A to Defendants' Memorandum in Opposition to Motion for Sanctions (Certificate of Service for the Notice of Removal).  Defendants stated that pursuant to Fed. R. Civ. P. 5(b)(2)(B), they served plaintiff via United States mail at his last known address.  Defendants also filed an affidavit of service.  Id.

Rule 5(b)(2)(B) specifically states that service by mail is complete upon mailing.  See also United States v. Duke, 50 F.3d 571 (8th Cir. 1995) (service by mail complete upon mailing).  Defendants have presented uncontradicted evidence that they mailed their filings, via U.S. Mail, to plaintiff's last known address at the time.  See Certificate of Service.  Defendants' manner of service was proper  and does not form a basis for sanctions.

Plaintiff next alleged that defendants unlawfully and unethically sought to deceive him into withdrawing his Supplemental Civil Complaint and threatened to strike this pleading.  Plaintiff refers to a letter sent to him by counsel for defendants, dated June 9, 2006, which he has attached as Exhibit A to his Contempt and Strike Supplemental Motion.  The letter reads as follows:

Dear Mr. O'Neal:

The St. Paul City Clerk's Office forwarded me a document it received on May 26, 2006 entitled "Supplemental Civil Complaint."  Both the Minnesota and federal rules of civil procedure require a party to obtain permission from the court prior to serving a supplemental pleading.  Further, such a pleading is permitted for those situations that have occurred since the date of the original pleading.  I have enclosed a copy of Federal Rule of Civil Procedure 15 for your review. FN1.

If you do not voluntarily withdraw this supplemental pleading or seek leave of the Court, Defendants will move to strike the pleading pursuant to Rule 8 and Rule 12(f) of the federal rules of civil procedure.  I have enclosed copies of such rules as well.  Under the Rules, a Motion to strike must be served and filed by June 15, 2006.  Accordingly, please let me know of your intentions prior to that date.  If I do not hear from you prior to that date, I will move to strike and seek costs.

Very truly yours,
Meghan L. Riley

FN1.  I enclose only the federal rule because Defendants have removed your lawsuit to federal court and so the federal rules govern the case.

This Court finds that Attorney Riley's letter is neither unlawful or unethical in nature, nor is there anything deceptive about it.  Minnesota Rule of Civil Procedure 15.04 and Federal Rule of Civil Procedure 15(d) both require a party to bring a motion to the Court to obtain permission to serve a supplemental pleading.  Defendants merely notified plaintiff that they believed he had violated both state and federal rules by serving them with the Supplemental Complaint before receiving permission from the Court to do so, and gave him an opportunity to withdraw this supplemental pleading before they moved to have it stricken.  Regardless of whether their interpretation of the law was correct, defendants were free to move to strike plaintiff's Supplemental

Complaint, and in fact, are commended for giving plaintiff advance notice of their intentions before proceeding to act.  Defendants' letter presents no grounds for the imposition of sanctions.

Plaintiff's third basis for sanctions is that counsel for defendants intentionally attempted to conceal his Supplemental Complaint and deliberately failed to file it with this Court.  This argument pertains to the procedures that are to be followed upon removal to federal court.  28 U.S.C. §1446(a) governs the filings in federal court upon removal.  It states:

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, <u>together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action</u>.

(Emphasis added).

Plaintiff argues that defendants were obligated to file his Supplemental Complaint along with their Notice of Removal and his other pleadings, and failed to do so. Defendants have not responded to this argument.

As an initial matter, the Court notes that plaintiff's Supplemental Complaint was not filed with defendants' Notice of Removal.  Only plaintiff's original Complaint and accompanying Exhibits were filed with the Notice of Removal.

It is clear from §1446(a) that only the pleadings that have been served upon a defendant are to be filed with the notice of removal.  <u>Id.</u>  Defendants' June 9, 2006, letter, excerpted above, stated that the Supplemental Complaint had been forwarded to

them from the St. Paul City Clerk's Office, which had received the pleading on May 26, 2006.[15]  Defendants filed their Notice of Removal on June 8, 2006.  Defendants' letter to plaintiff is dated June 9, 2006.  Given that the St. Paul City Clerk's Office received the pleading prior to the removal of this case to Federal Court on June 8, 2006, the Court assumes that defendants had notice of plaintiff's Supplemental Complaint at the time they removed the case to federal court.[16]

Nevertheless, it is clear from defendants' letter to plaintiff that they believed his filing of the Supplemental Complaint to be in violation of the Federal Rules of Civil Procedure, and perhaps by extension, they believed that they had not been served with a viable pleading which they needed to include in their removal papers.  However, §1446(a) does not make exception for the filings that defendants may find impermissible.  Therefore, the defendants should have, pursuant to §1446(a), included plaintiff's Supplemental Complaint with their Notice of Removal as it was a pleading that had been served upon them at the time they removed the case to federal court.

Nevertheless, despite having reached this conclusion, this Court will not impose sanctions upon defendants for their conduct.  There is simply no evidentiary support for plaintiff's argument that they attempted to defraud the Court and conceal plaintiff's

---

[15]     A copy of the Supplemental Civil Complaint, attached to plaintiff's Contempt and Strike Supplemental Motion, shows a file stamp of May 19, 2006.  The discrepancy between the May 19, 2006 file stamp and the defendants' statement that the St. Paul City Clerk's Office's received it on May 26, 2006, has not been explained by either party.

[16]     If defendants had in fact not been properly served with plaintiff's Supplemental Complaint at the time they removed the case, they would not be required to file it with their Notice of Removal because §1446(a) requires only that the removing party file pleadings served upon them.  See Usatorres v. Marina Mercante Nicaraguenses, 768 F.2d 1285 (11th Cir. 1985).

Supplemental Complaint by failing to attach it to their Notice of Removal.   Therefore, the Court does not find that defendants' failure to attach a copy of plaintiff's Supplemental Complaint with their Notice of Removal was so egregious as to warrant sanctions. [17]

Plaintiff's third ground for his sanctions motions is that counsel for defendants submitted a Notice of Removal of Civil Action, in which she falsely alleged that this case arises under a federal claim.   Plaintiff's argument that defendants made misrepresentations to the Court by filing a Notice of Removal is without merit. Defendants removed this case to federal court based on their belief that this federal court has jurisdiction over the case.   Had plaintiff wanted the case to be heard in state court, he could have commenced a suit claiming only violations of state law.   "As a general rule a plaintiff can avoid removal to federal court by alleging only state law claims."   Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536 (8th Cir. 1996) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (citation omitted)(1987)).   Further, "the 'well-pleaded complaint rule' requires that a federal cause of action must be stated on the face of the complaint before the defendant may remove the action based on federal question jurisdiction."   Id.  Here, plaintiff clearly stated a federal cause of action on the face of his Complaint  -- he alleged numerous violations of federal civil rights statutes and the Constitution.   While plaintiff also listed state causes of action, as this Court has already found, the presence of the federal claims allowed the defendants to

---

[17]   This Court notes that failure to file some of the necessary papers upon removal to federal court is not irremediable, and has no effect on removal if the case is in its nature removable. Covington v. Indemnity Ins. Co., 251 F.2d 930 (5th Cir. 1958), cert. den. 357 U.S. 921, 2 L.Ed. 2d 1365, 78 S.Ct. 1362.  See also Riehl v. National Mutual Ins. Co., 374 F.2d 739 (7th Cir. 1967) (where a copy of a complaint filed in state court was not filed in district court upon removal was found to be only a minor irregularity and did not deprive district court of jurisdiction).

properly remove the case to federal court.  In so doing, defendants did not make any sort of misrepresentation to either this Court or the Second Judicial District Court of Minnesota.  Because plaintiff's allegations are unsupported, there is no basis to impose sanctions on defendants.

Finally, this Court denies plaintiff's motion for sanctions based on his failure to observe the safe harbor provision of Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure.  According to defendants, plaintiff served them with his motion for sanctions on June 21, 2006.  Defendants' Memorandum in Opposition to Motion for Sanctions, p.3.  Plaintiff also filed his motion for sanctions with the Court on June 21, 2006.  The Court finds that plaintiff violated Rule 11(c)(1)(A).  He should not have filed his sanctions motions until 21 days after he served the motions on defendants.  Failure to comply with Rule 11(c)(1)(A) can result in denial of a motion for sanctions.  See e.g. Steinlage v. Mayo Clinic Rochester, 235 F.R.D. 668 (D.Minn. 2006); Gordon v. Unifund CCR Partners, 345 F.3d 1028 (8th Cir. 2003).

For all of these reasons, the Court recommends that plaintiff's Motion for Sanctions and Contempt Sanctions Motion be denied.

## IV.   PLAINTIFF'S MOTION FOR SUBPOENA

Plaintiff also moves this Court for a subpoena to issue against defendants for discovery purposes, requesting a number of documents pertaining to the incident that occurred on August 15, 2005, including 911 records and telephone records of the Radisson hotel.  [Docket Nos. 8 and 36].  In response, defendants object and argue that plaintiff is seeking discovery prematurely, and that the Federal Rules of Civil Procedure

do not provide for discovery prior to a court-ordered Rule 26(f) conference and/or Rule 16 conference.

Rule 34 of the Federal Rules of Civil Procedure governs discovery requests, and states in pertinent part:

> (a) Scope. Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served…
>
> (b) Procedure. The request shall set forth, either by individual item or by category, the items to be inspected and describe each with reasonable particularity. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts. Without leave of court or written stipulation, a request may not be served before the time specified in Rule 26(d).

Rule 26(d) of the Federal Rules of Civil Procedure states as follows:

> (d) Timing and Sequence of Discovery. Except in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E), <u>or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)</u>. Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery.

(Emphasis added).

Rule 26(f) also states in pertinent part:

> (f) Conference of Parties; Planning for Discovery. Except in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E) or when otherwise ordered, the parties must, as soon as practicable and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b), confer to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1), and to develop a proposed discovery plan that indicates the parties' views and proposals…

Because the parties have not conferred as required by Rule 26(f), and because the parties have not agreed that discovery may be expedited in this case, plaintiff's motion for discovery is premature under Rule 26(d).   On this basis, the Court recommends that plaintiff's Motion for Subpoena be denied.

## V.   PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff moves the Court to enter default judgment against defendants for their failure to file an answer pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure [Docket No. 18].  Plaintiff's motion is based upon the defendants' failure to file an answer to his Supplemental Complaint.[18]

This Court entered an order on June 23, 2006 [Docket No. 23], directing that no further motions be filed until the Court had ruled on the motions that had already been filed.  Plaintiff filed his motion for default judgment on June 27, 2006.  Plaintiff's motion was therefore filed in direct violation of this Court's June 23, 2006 Order, and consequently plaintiff's motion should be denied on this basis alone.

---

[18]   Defendants have not addressed in their responsive memoranda their failure to file an answer to plaintiff's Supplemental Complaint.

However, even if the Court were to consider plaintiff's motion on the merits, the Court would find that defendants were not in default. The Federal Rules of Civil Procedure provide that default or default judgment may be entered against a party who "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." Fed. R. Civ. P. 55(a). A motion for default judgment must be preceded by an entry of default. See Fed. R. Civ. P. 55(a) and (b).

Here, plaintiff asserts that the defendants are in default because they failed to answer his Supplemental Complaint. However, no such motion has been previously brought by plaintiff to find any of the defendants in default, and no such judicial determination has been made. Further, even if plaintiff had stylized his motion as a motion to find defendants in default, there is nothing to indicate that defendants are not properly defending this case. They filed an answer to plaintiff's Complaint. Defendants have also filed motions and memoranda in response to plaintiff's motions, and have complied with this Court's Orders. Defendants have not failed "to plead or otherwise defend" as is required by Rule 55(a), and consequently, there is no reason to believe that defendants were abdicating their defense of this case. While it is not entirely clear to the Court why defendants did not prior to June 23, 2006, file an answer to plaintiff's Supplemental Complaint, or alternatively, move to have it stricken as they advised plaintiff they would do in their letter to him, the Court does not find that their failure to file an answer to an improperly served Supplemental Complaint provides grounds for a finding that defendants are in default.

The Court consequently recommends that plaintiff's Motion for Default Judgment be denied.

## VI.    PLAINTIFF'S MOTION TO FILE ADDITIONAL PLEADINGS

On July 6, 2006, plaintiff filed an Administrative Emergency Motion to File Additional Pleadings Inter Alia Against Defendants [Docket No. 26], voicing his opposition to this Court's June 23, 2006 Order that no further motions be filed [Docket No. 17].   After filing his Motion to File Additional Pleadings and without waiting for a response from the Court, plaintiff proceeded to file 11 additional pleadings, prompting this Court to issue a second Order on July 20, 2006 [Docket No. 46], that again directed that no further pleadings, motions, documents, or correspondence were to be filed with the Court until a ruling issued on the motions that were before the Court at that time. Nonetheless, after the July 20, 2006 Order, plaintiff filed two more pleadings and four letters.   Since plaintiff has essentially ignored this Court's Orders of June 23 and July 20, 2006, and filed additional pleadings in direct contravention to those Orders, the Court recommends that plaintiff's Motion to File Additional Pleadings be denied.

## VII.   PLAINTIFF'S MOTIONS FOR TRO, PROTECTIVE ORDER AND INJUNCTIVE RELIEF

In addition to the relief originally requested in his Complaint, plaintiff has filed fourteen separate pleadings relating to his request that the Court issue a temporary restraining order and injunctive relief.[19]

---

[19]    Plaintiff requests this Court to enter both a temporary restraining order and a preliminary injunction.   Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order.   See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989) (affirming the district court's application of the Dataphase factors to a motion for a temporary restraining order); Jackson v. Nat'l Football League, 802 F. Supp. 226, 229 (D. Minn. 1992) (concluding that the Dataphase factors apply to requests for temporary restraining orders and preliminary injunctions) (citations omitted).

In addition to the multiple violations of the MGDPA, plaintiff alleges that he has been the subject of retaliatory discrimination on the part of the defendants. Plaintiff asks the Court to restrain defendants from further violating his civil rights and the MGDPA, and to ensure his personal safety. [Docket Nos. 3, 9].

Plaintiff specifically alleges the following incidents, among others, as evidence in support of his motions:

- Defendants continue to deny plaintiff access to records that he lawfully seeks pursuant to the MGDPA [Docket No. 6, ¶ 1]

- Defendants have caused the filing of false charges against plaintiff and have fraudulently created and maintained false medical records regarding the plaintiff [Docket No. 6, ¶2; Docket No. 25, ¶ 10]

- Police records evidencing the alleged assault and robbery by defendant Vang are being withheld in retaliation for a phone call made by plaintiff to the Internal Affairs Department of the St. Paul Police Department regarding plaintiff's stolen wallet [Docket 6, ¶ 3]

- Counsel for defendants in this case unlawfully attempted to remove this case to federal court in an effort to effectuate more time for assaults to be committed against plaintiff [Docket 6, ¶ 4]

- Various tactics have been employed in order to deny plaintiff access to court, including mail tampering, mail theft, housing discrimination, shelter evictions, utility disconnections, and death threats [Docket 6, ¶ 5; Docket 25, ¶¶ 1-6]

- The Ramsey County Sheriff and the United States Postal Service were utilized against plaintiff in order to divert pleadings from the courts [Docket 6, ¶ 8]

- Defendants Vang and Graupman discriminated against plaintiff by their failure to create and submit police reports regarding the events at the Radisson Hotel on August 15, 2005 [Docket 9, ¶ 11]

- On March 17, 2006, defendants produced an unlawful and fraudulently manufactured version of the 911 call tapes from August 15, 2005, and accompanying transcripts which omitted plaintiff's second 911 call requesting a supervisor [Docket 11, ¶ 2]

- Plaintiff submitted a notice of inaccurate data on May 17, 2006 and defendants have not been responsive to the notice [Docket 11, ¶ 5]

- Plaintiff has experienced assaults, death threats, unlawful arrests, and false complaints of probation violation relating to cases that are not in front of this Court  [Docket 9, ¶¶ 18-20]

- Plaintiff was the target of an assassination attempt in Madison, Wisconsin [Docket 12, ¶18].

- Plaintiff was assaulted and received retaliatory death threats in LaCrosse, Wisconsin  [Docket 12, ¶ 20].

As a general rule, in deciding whether to grant injunctive relief, the district court weighs: "1) the threat of irreparable harm to the moving party; 2) the movant's likelihood of success on the merits; 3) the balance between the harm to the movant if the injunction is denied and the harm to other parties if the injunction is granted; and 4) the public interest." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (citing Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981)); see also, e.g., Davis v. Francis Howell Sch. Dist., 104 F.3d 204, 205 (8th Cir. 1997). The party seeking injunctive relief bears the "complete burden" of establishing that such relief is necessary.  Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987); see also Davis, 104 F.3d at 205-6.  However, "'[w]hen an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." United States v. White, 769 F.2d 511, 515 (8th Cir.1985); Donovan v. Brown Equip. & Serv. Tools, 666 F.2d 148, 157 (5th Cir.1982) (same); see also United States v. Estate Pres. Servs., 202 F.3d 1093, 1098 (9th Cir.2000) (noting traditional requirements for injunctive relief need not be satisfied where injunction is expressly authorized by statute); Envtl. Def. Fund v. Lamphier, 714 F.2d 331, 338 (4th Cir.1983)

(stating where a statute authorizes injunctive relief for its enforcement, plaintiffs need not plead and prove irreparable injury)." Minnesota ex rel. Hatch v. Sunbelt Communications and Marketing, 282 F.Supp.2d 976 (D.Minn. 2002).

The Court will now address plaintiff's motion for an injunction or temporary restraining order with respect to each of his legal claims.

### A.      Injunction Regarding MGDPA Claims

Plaintiff requests this Court to enjoin defendants from further violating the MGDPA.  The MGDPA directly provides for several remedies, including injunction. Minn. Stat. §13.08, subd. 2, states that "a responsible authority or government entity which violates or proposes to violate this chapter may be enjoined by the district court. The court may make any order or judgment as may be necessary to prevent the use or employment by any person of any practices which violate this chapter."  Therefore, because an injunction is expressly authorized by the MGDPA, plaintiff does not need to prove irreparable injury.  However, plaintiff does need to demonstrate the prerequisites for the remedy of injunction under the statute.  See White, 769 F2d at 515.  That is, plaintiff must still show that a responsible government entity has violated or is proposing to violate the MGDPA – he must show that defendants' conduct regarding his requests for data violated the MGDPA or that defendants continue to violate the MGDPA.

From the evidence presented by the parties, it is not at all clear to the Court that defendants have violated the MGDPA or are continuing to violate it.  In their Answer, defendants denied all of plaintiff's allegations.  Further, defendants have sent plaintiff at least two letters indicating that they believed they were in compliance with the MGDPA. (Letter dated November 9, 2005 to plaintiff from Sheri Moore, attached as Exhibit B to

plaintiff's Original Complaint; Letter dated June 19, 2006 to plaintiff from Sheri Moore, attached as Exhibit to Docket No. 24).   Plaintiff has not submitted any evidence to support his allegations that defendants violated the MGDPA or are engaging in conduct that evidences continued violation of the MGDPA.   As plaintiff has not demonstrated by evidence the prerequisites for an injunction to be issued in this case under the MGDPA, this Court recommends denial of plaintiff's request that it enjoin defendants from violating the MGDPA.

**B. Injunction Regarding Plaintiff's Civil Rights Claims Under 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, and 1988**[20]

Plaintiff also requests an injunction to generally enjoin defendants from further violating his civil rights and to ensure his personal safety.   An injunction is not explicitly authorized by 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, and 1988.   Consequently, plaintiff must address and establish that all four of the Dataphase factors  weigh in his favor.   Defendants oppose plaintiff's motion and argue that all of the Dataphase factors weigh against plaintiff's request for an injunction.

**1.    Threat of Irreparable Harm**

"[T]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction."   Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 299 (8th Cir. 1996).   "Plaintiff must establish that a sufficient threat of irreparable harm will result without injunctive relief, such harm which is not compensable by money damages."   Graham Webb Int'l v. Helene Curtis, Inc., 17 F. Supp. 2d 919, 924 (D. Minn. 1998) (See also Guy Carpenter & Co., Inc. v. John B. Collins Associates, Inc., 179

---

[20]    Plaintiff's claim under §2000 et seq. is addressed separately.

Fed.Appx. 982 (8th Cir. 2006); Gelco Corp. v. Coniston Partners, 811 F.2d at 420 (both indicating a party has not shown irreparable harm if the alleged harm is compensable by money damages)).  Thus, if a party has an adequate remedy at law for the harm they will suffer, the party cannot establish irreparable harm for purposes of injunctive relief. See Adam-Mellang, 96 F.3d at 300.

Here, the threat of irreparable harm weighs in favor of denying injunctive relief in this case.  Plaintiff claims that the irreparable harm that he will endure if injunctive relief is not granted pertains to discrimination, lack of access to the courts, denial of his constitutional rights and violation of his civil rights.   He claims that he has already suffered irreparable damage due to the unlawful denial of the police records he seeks pursuant to the MGDPA.  Docket No. 3, ¶ 24.  Plaintiff also claims that he has suffered irreparable damage because the 911 calls of August 15, 2005 were intermingled and the original separate calls cannot be recovered.  Plaintiff's Complaint, ¶ 33.  However, plaintiff has pled monetary damages in his Complaint, evidencing that there is an adequate remedy at law to address his claims.  Therefore, because plaintiff does have an adequate remedy at law – i.e. money – for any harm he may have suffered, or will suffer, as a result of defendants' alleged violations of his civil rights, he cannot establish irreparable harm for the purposes of injunctive relief.

Regarding plaintiff's request that the Court enjoin defendants from making further attempts to retaliate against him "by any means of assault," it is obvious that assault could very well constitute irreparable harm.  [Docket No. 12, p. 1].  However, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."

<u>Devose v. Herrington</u>, 42 F.3d 470 (8th Cir.1994).  The "assaults" to which plaintiff refers include mail tampering, shelter eviction, false arrest and utility and phone problems, as well as physical assault, in that plaintiff claims that he was assaulted and received retaliatory death threats in LaCrosse, Wisconsin, and experienced an assassination attempt in Madison, Wisconsin.  However, plaintiff has offered no evidence to support the allegation that defendants, citizens of Minnesota, are responsible for any of this conduct, and the Court cannot find irreparable harm on a theoretical basis.

In sum, other than his own statements, plaintiff has submitted no evidence that he continues to be physically assaulted by any of the defendants.  Accordingly, plaintiff has not made a sufficient showing of irreparable harm, and the factor of irreparable harm weighs against granting an injunction.[21]

### 2.  Likelihood of Success on the Merits

The likelihood of success on the merits of plaintiff's civil rights claims also weighs against issuing an injunction or temporary restraining order.  Plaintiff alleges violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, and 1988.

---

[21]     On November 27, 2006, plaintiff filed a letter with the Court advising it that "defendants, through other governmental sources, continue, in vain attempts, to undermine herein litigation."  [Docket No. 52].  Plaintiff's letter refers to two other civil actions that he has instituted in Alabama, one against Sprint/Nextel, Inc., and one against a person who appears to have evicted plaintiff from an office.  Plaintiff appears to offer this information in support of his request for an injunction because he believes that these two pending actions are related to the instant case and are in some form illustrative of his claim that defendants are undermining this case.  Even if this Court were to consider this letter, there is nothing in it to show that the activities described are tied to any of the defendants.

a.    42 U.S.C. §1981

Section 1981 provides for equal rights under the law and states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."   In order to prevail on a claim under §1981, a plaintiff must show (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity as defined in §1981.  Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir.2004).  The Court notes that it is not clear whether plaintiff is relying on the Right-to-Contract Clause of §1981 or the Full-and-Equal-Benefit Clause of §1981.  However, because there is no support for the proposition that plaintiff had a contract with any of the defendants and plaintiff has not advanced such a claim, the Court will assume that his claim is brought pursuant to the Full-and-Equal-Benefit Clause.

Plaintiff claims membership in a protected class on the basis of being a Melanic Amerikan, thereby satisfying the first prong under §1981.[22]  However, plaintiff has failed to present any evidence that defendants discriminated against him based on race, much less that defendants intended to discriminate against him on this basis.  Further, plaintiff

---

[22]    Plaintiff does not specifically state for which protected class Melanic Amerikans qualify.  However, based upon the language in plaintiff's Complaint that Melanic Amerikans ancestrally descended from Afrika, and "subsequent to installation of the XIV Amendment thereto, conferring upon his race, equal protections, . . ." the Court will treat the classification of plaintiff as a Melanic Amerikan as a racial classification.  Complaint, p. 10.

has not presented any evidence that defendants' alleged discrimination interfered with his right to the full and equal benefits of the laws under §1981.  Therefore, this Court finds that plaintiff is not likely to succeed with his §1981 claim.

        b.    <u>42 U.S.C. §1982</u>

Section 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  The elements of a §1982 claim are 1) membership in a protected class; (2) discriminatory intent on the part of the defendant; and (3) interference with the rights or benefits connected with the ownership of property.  <u>Daniels v. Dillard's, Inc.</u>, 373 F.3d 885, 887 (8th Cir. 2004).  Again, plaintiff has claimed membership in a protected class, <u>i.e.</u> Melanic Amerikan, but he presented no evidence that defendants discriminated against him based on race or had discriminatory intentions.  Further, plaintiff has made his §1982 claim without reference to any specific property ownership.  Therefore, the Court concludes that plaintiff is not likely to succeed with his §1982 claim.

        c.    <u>42 U.S.C. §1983</u>

Section 1983 states in pertinent part "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"  The first element required for a § 1983 claim is a determination of "whether the plaintiff has been

deprived of a right 'secured by the Constitution and laws' of the United States." <u>Doe v.</u> <u>Wright</u>, 82 F.3d 265, 268 (8th Cir. 1996) (quoting <u>Martinez v. California</u>, 444 U.S. 277, 284, 100 S.Ct. 553, 558 (1980)).  The second element for a § 1983 claim is that "'the alleged deprivation was committed by a person acting under color of state law.'" <u>Shrum</u> <u>ex rel. Kelly v. Kluck</u>, 249 F.3d 773, 778 (8th Cir. 2001) (quoting <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).  Here, plaintiff has alleged both elements in his Complaint.  He has asserted violation of rights "secured by the Constitution and laws" and he has alleged that state actors committed these violations. The question, however, in connection with a motion for injunctive relief is whether plaintiff has presented sufficient evidence to establish that it is likely that state actors violated the rights provided to him by federal civil rights statutes (<u>e.g.</u> 42 U.S.C. §§ 1981, 1982, 1985(3), 1986, 1988 and 2000 <u>et seq.</u>) or his Constitutional rights of equal protection under the Fourteenth Amendment and right of access to the courts.

To the extent that plaintiff's § 1983 count is based on alleged violations of federal statutes 42 U.S.C. §§ 1981, 1982, 1985(3), 1986, 1988 and 2000 <u>et. seq.</u>, the Court's analysis of the prong likelihood of success on the merits is identical to this Court's analysis of the likelihood of success on the merits of each claim made by plaintiff under each separate statute.  Thus, because this Court has determined that plaintiff is not likely to succeed on his claims under 42 U.S.C. § 1981, 1982, 1985(3), 1986, 1988 and 2000 <u>et. seq.</u>, (see Sections VII.B.2(a), (b), <u>supra</u>, Sections VII.B.2(d)-(g), <u>infra</u>; VII.C, <u>infra</u>), this Court similarly finds that he is not likely to succeed on his statutory claims under § 1983.

As to plaintiff's § 1983 claim that defendants violated his right to equal protection as guaranteed to him by the Fourteenth Amendment[23], plaintiff must present evidence to show that it is likely that he was denied equal protection of the laws by defendants and that defendants did so while acting in their official capacity.  The Equal Protection Clause generally requires the government to treat similarly situated people alike.  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  In order to succeed on an equal protection claim, a claimant must prove that he has been treated differently from other similarly situated individuals, either by operation of a state law or regulation, or by a decision by a state official.  See Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000) ("[i]n general, the Equal Protection Clause requires that state actors treat similarly situated people alike"), cert. denied, 534 U.S. 816 (2001) (citing Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995)).  "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that he was treated differently than others who were similarly situated to him."  Klinger, 31 F.3d at 731.  Absent a threshold showing that he is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim.  Id.

In addition to showing that he has been treated differently from others who are similarly situated, an equal protection claimant must also show, by direct or circumstantial evidence, that discriminatory intent was the motivating factor for the

---

[23]     In light of plaintiff's allegations in his Complaint that he is a member of protected classes (Complaint, p. 10-11), his mention of the "XIV Amendment" (Complaint, p. 10), his reference to "equal protection" (Count 1, ¶ 6), and his assertions of discrimination, the Court has inferred that plaintiff is claiming that he was deprived of his right to equal protection as guaranteed to him by the Fourteenth Amendment.

differentiation in treatment.  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  <u>Vill. of Arlington Heights v. Metropo. Hous. Dev. Corp.</u>, 429 U.S. 252, 265 (1977).

Plaintiff's requests for injunctive relief based on the Fourteenth Amendment fails for two reasons.  First, while he repeatedly states that defendants have discriminated against him, he never presented evidence to show that other people similarly situated to him were not treated in a discriminatory manner as is required by an equal protection claim.  In fact, at no point does plaintiff's Complaint discuss the treatment, discriminatory or otherwise, of people other than himself.  Second, plaintiff has produced no evidence of discriminatory intent by any of the defendants -- that is, he has not given the Court any evidence to show that the defendants' conduct towards him was motivated by his race, religion or disability.  In sum, because plaintiff has offered no evidence to show that any differentiation in treatment exists between him and others similarly situated to him, or any evidence of discriminatory intent, plaintiff is unlikely to succeed with an equal protection claim under §1983.

The second constitutional right violation alleged in plaintiff's pleadings is the right of access to the courts.  "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."  <u>Bill Johnson's Restaurants, Inc. v. N.L.R.B.</u>, 461 U.S. 731, 741, 103 S.Ct. 2161, 2169 (1983).   An individual's constitutional right of access to the courts "cannot be impaired, either directly, by intercepting mail…or indirectly, by threatening or harassing an [individual] in retaliation for filing lawsuits. It is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit

the [individual's] right of access." Sanders v. St. Louis County, 724 F.2d 665, 666 (8th Cir.1983).

In the context of his §1983 claim, plaintiff must show that his access to the courts was limited by a person acting under color of state law. See Shrum ex rel. Kelly, supra. Plaintiff repeatedly states that his right of access to the courts has been compromised in the form of intercepted mail and interruption of phone service. Docket No. 6, ¶ 5, Docket No. 25, ¶¶ 1-6. He further states that defendants are retaliating against him for filing a complaint against defendant Officer Vang. Docket No. 6, ¶ 3. However, plaintiff has presented no evidence to show that any of the defendants are responsible for intercepting plaintiff's mail or interrupting his phone service, or that they are doing so in retaliation for plaintiff filing suit against them or in retaliation for plaintiff's report against Officer Vang. Lacking evidentiary support for his claims that any of the defendants interfered with his mail or phone service or engaged in retaliatory conduct, this Court concludes that plaintiff is unlikely to succeed with a claim of right access to the courts under §1983.

d.   42 U.S.C. §1985(3)

Section 1985(3) states that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any

lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to prove the existence of a conspiracy, plaintiff will have to prove that two or more persons did the following:

(1) "[C]onspire... (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." ... that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989); 42 U.S.C. § 1985(3). "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'" Id. (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). Further, plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." City of Omaha Employees Betterment Ass'n, 883 F.2d at 652 (citing Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir.1988)). Plaintiff can satisfy this burden by "point[ing] to at least some facts which would suggest that [defendants] 'reached an understanding' to violate [his] rights." Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir.1989) (quoting Myers v. Morris, 810 F.2d 1437, 1454 (8th Cir.1987)).

Again, in addition to his failure to demonstrate any discrimination, plaintiff has presented no facts suggesting that defendants acted together, or reached an agreement of any kind, let alone an agreement to violate plaintiff's rights.   Therefore, the Court finds that it is unlikely that plaintiff will succeed with his §1985(3) claim.

### e.  42 U.S.C. §1986

Section 1986 states that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

A cause of action under 42 U.S.C.1986 is dependent upon a valid § 1985 claim. See Lewellen v. Raff, 843 F.2d 1103, 1116 (8th Cir.1988).   As discussed above, it is unlikely that plaintiff can succeed on his §1985 claim.  Consequently, it is unlikely that he will succeed with his §1986 claim.

### f.    42 U.S.C. §1988

Section 1988 provides the court with discretion to grant attorney's fees in any action to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986.

Because plaintiff has not made a showing that those sections require enforcement, and has only generally requested attorney's fees without specificity, there is no basis to grant attorney's fees to plaintiff at this time.

g.      Obstruction of Justice

Plaintiff charges defendants with obstruction of justice related to defendants' violation of the MGDPA and civil rights statutes.  Plaintiff does not cite to violation of any statute or case law that prohibits the obstruction of justice by defendants.  Lacking such information, this Court cannot conclude that plaintiff will succeed with this claim.

h.      Intentional Infliction of Emotional Distress

Plaintiff also claims intentional infliction of emotional distress.   Under the MGDPA, a plaintiff can recover damages for emotional harm, but must still satisfy the standard of proof necessary for emotional harm.  Navarre v. South Washington County Schools, 652 N.W.2d 9, 30 (Minn. 2002).   "Under Minnesota law, the elements of intentional infliction of emotional distress are: (1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it caused emotional distress; and (4) the distress was severe.   Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn.1983).   The conduct "must be extreme and outrageous, so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652-53 n. 3 (Minn.1979) (citation omitted)."   Hill v. Scott, 349 F.3d 1068 (8th Cir. 2003).  Plaintiff claims that defendants intentionally inflicted emotional distress upon him through their actions.  While plaintiff views defendants' conduct as extreme, it is not obvious to this Court that defendants' conduct passed the boundaries of decency, or

that it was improper in any form.  At this juncture of the case, plaintiff's interpretation of defendants' behavior is not substantiated by any evidence.  Further, plaintiff does not identify his emotional distress with any particularity, nor does he identify the extent of its severity.  For these reasons, the Court finds that it is unlikely that plaintiff will succeed with a claim of intentional infliction of emotional distress.

In summary, after reviewing the substance of all of plaintiff's claims, plaintiff has not demonstrated <u>through evidence</u> that his claims are likely to succeed on their merits, and therefore, the factor of likelihood of success on the merits weighs against granting an injunction.

### 3.  Balance of Harms

The third factor, balancing the harm to defendants if injunctive relief is granted and the harm to plaintiff if the relief is denied, weighs against the issuance of an injunction.  Even if the Court were to issue an injunction, plaintiff has not shown that defendants are the persons responsible for whatever harassment he is experiencing. Aside from the MGDPA claims, the role of defendants in the remainder of plaintiff's allegations is not at all clear.  Plaintiff alleges mail tampering, physical assaults, housing discrimination, shelter evictions, utility disconnections, and death threats, but offers no evidence to establish that defendants are related to any of these problems.  The relationship between plaintiff's difficulties and the defendants is simply too tenuous to support the issuance of an injunction.  Consequently, the harm to defendants if injunctive relief is granted outweighs the harm to plaintiff if relief is denied.  Therefore, the factor of balance of harms weighs against issuing an injunction.

### 4. Public Interest

The public interest factor also weighs in favor of denying injunctive relief in this case.  While the public has an interest in insuring that their state actors act in a non-discriminatory manner, there is no evidence in this case showing that the requested injunction would accomplish this goal because it has not been shown that the defendants are engaging in discriminatory conduct, much less ongoing conduct. Further, the public has a general interest in seeing that its citizens are not being subjected to injunctions issued capriciously and without sufficient corroboration. Therefore, the public interest weighs in favor of denying injunctive relief.

Given the above analysis of the four factors bearing on plaintiff's request for injunctive relief, it is clear to the Court that such relief is not warranted for plaintiff's civil rights claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, and 1988. Therefore, it recommends denial of plaintiff's motions for a temporary restraining order and permanent injunctive relief.

### C. Plaintiff's Request for Injunction Under 42 U.S.C. §2000 et seq.

An injunction is explicitly authorized by 42 U.S.C. §2000 et seq., and therefore does not require that plaintiff prove the traditional requirements for injunctive relief. Therefore, the Court addresses this request separately from the rest of plaintiff's civil rights claims.  See Minnesota ex rel. Hatch v. Sunbelt Communications and Marketing, 282 F.Supp.2d 976 (D.Minn. 2002).

Section 2000(a) states in pertinent part that: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section,

without discrimination or segregation on the ground of race, color, religion, or natural origin." The only relief available under a 42 U.S.C. § 2000(a) racial discrimination claim is injunctive relief. See Adickes v. S.H. Kress & Company, 398 U.S. 144, 150-51 (1970); Battle v. Dayton-Hudson Corporation, 399 F.Supp. 900, 905 (Minn.1975). Plaintiff has therefore properly requested injunctive relief and does not need to show irreparable harm with respect to his claim under §2000 et seq. However, plaintiff still needs to demonstrate the prerequisites for the remedy of injunction under the statute – i.e. that he has been denied access to a place of public accommodation based on his race or religion. Plaintiff does not specifically identify the public place to which he is being denied access, nor has he offered any evidence that he is being denied access to any public place, either in a discriminatory manner or otherwise. Because he has not made that showing, an injunction is not warranted.

In light of the above analysis, the Court recommends that plaintiff's motions for a temporary restraining order or injunction be denied.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.  Plaintiff's motion for Remand [Docket Nos. 7 and 10] be **DENIED**.

2.  Plaintiff's motion for Sanctions [Docket Nos. 13, 19, 32, 38, 41, and 47] be **DENIED**.

3.  Plaintiff's motion for Subpoena [Docket Nos. 8 and 36] be **DENIED**.

4.  Plaintiff's motion for Default Judgment [Docket No. 18] be **DENIED**.

5.  Plaintiff's motion to File Additional Pleadings [Docket No. 26] be **DENIED**.

6.  Plaintiff's motion for Temporary Restraining Order and/or Injunction [Docket Nos. 3, 6, 9, 11, 12, 27, 28, 33-35, 37, and 42] be **DENIED**.


Dated:          December 7, 2006


                          *s/ Janie S. Mayeron*
                          JANIE S. MAYERON
                          United States Magistrate Judge




Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **December 26, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.